IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHERRY LEDBETTER,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

CV 07-721-PK

FINDINGS AND RECOMMENDATION

RORY LINERUD
Linerud Law Firm
PO Box 1105
Salem, Oregon 97308

Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204

L. JAMALA EDWARDS
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104

Attorneys for Defendant

PAPAK, Magistrate Judge:

Plaintiff Sherry Ledbetter challenges the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed.

**BACKGROUND**

Ledbetter was 46 at the alleged onset of disability and 47 when her insured status under the Social Security Act expired. Tr. 57, 60, 63, 72.[1] She went to school through the 9th grade and later earned a high school equivalency diploma. Tr. 69. She worked as a short-order cook, housekeeper/cleaner, waitress and cook helper. Tr. 64, 424. Ledbetter alleged she became unable to work on November 20, 1999, but later testified she worked until February 10, 2000. Tr. 63, 230. She initially claimed disability due to emphysema, asthma, diabetes, a knee injury, low back problems and allergies. Tr. 63. When she testified in September 2004, Ledbetter added allegations of bilateral carpal tunnel syndrome and panic attacks. Tr. 233, 238-39.

Ledbetter alleged she became disabled beginning November 20, 1999. Tr. 63. She satisfied the insured status requirements for a claim under Title II through December 31, 2000. Tr. 60, 72. She must establish that her disability began on or before that date to prevail on her claim. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

---

[1] "Tr." refers to the official transcript of the administrative record (docket # 9).

Accordingly, the relevant period for this case is November 20, 1999, through December 31, 2000.

The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Ledbetter had medically determinable impairments of chronic obstructive pulmonary disease ("COPD") and bilateral carpal tunnel syndrome during the relevant period. The ALJ assessed the limitations imposed by these impairments up to the date her insured status expired, and found Ledbetter remained capable of performing her past relevant work as a housekeeper/cleaner or waitress. The ALJ concluded at step four of the decision-making process that Ledbetter was not disabled within the meaning of the Social Security Act at or before the expiration of her insured status.

Ledbetter filed her application on December 13, 2002. Tr. 57-59. A previous ALJ found her not disabled in a written decision dated January 12, 2005. Tr. 12-22. Based on a stipulation between the parties, this court reversed and remanded the first ALJ's decision pursuant to sentence four of 42 U.S.C. § 405(g). Tr. 262-63. After remand, a different ALJ conducted further proceedings and, on March 15, 2007, issued the decision that is challenged here. Tr. 244-56.

**STANDARD OF REVIEW**

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). The factual findings must be upheld if supported by inferences reasonably drawn from the record and if evidence

supports more than one rational interpretation, the court must defer to the Commissioner's decision. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

Ledbetter argues the ALJ erroneously identified her severe impairments at step two of the decision-making process. She contends the ALJ improperly assessed her residual functional capacity ("RFC") and, therefore, improperly concluded she is capable of doing her past work. Ledbetter's attorney further alleges the ALJ abused her discretion and demonstrated bias in reaching her decision.

### I. Severe Impairments

Ledbetter contends the ALJ erred at step two of the decision-making process by failing to identify all of her severe impairments, omitting carpal tunnel syndrome and panic disorder. At step two, the claimant must make a threshold showing of some restriction in the ability to perform work-related activities, due to a medically determinable impairment or combination of impairments. If she cannot meet this burden, the Commissioner will find her not disabled without continuing to the remaining steps in the five-step decision-making sequence. *Yuckert*, 482 U.S. at 146; 20 C.F.R. § 404.1520(c); SSR 85-28 1985 WL 56856 *3 (November 30, 1984). It is a *de minimis* screening test to dispose of frivolous claims.

At step two, the task is not to identify each individual impairment that would independently satisfy the *de minimis* screening test. The question is whether any combination of impairments satisfies that burden. The ALJ resolved this question in Ledbetter's favor, finding that she had shown enough functional limitation from COPD to surmount her burden at step two. Tr. 250. The ALJ properly proceeded to the remaining steps in the decision-making process.

Any error in designating a specific individual impairment "severe" could not have prejudiced Ledbetter at step two, because step two was resolved in her favor. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(Any error in omitting obesity from list of severe impairments at step two harmless where step two was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)(failure to list bursitis as severe at step two harmless error where limitations posed by bursitis were considered in the decision).

Because Ledbetter's claim survived the step-two burden, the ALJ was required to consider all her medically determinable impairments, severe and non-severe, in the remaining steps of the decision making process. 20 C.F.R. § 404.1523. The ALJ fully considered all the evidence of functional limitations from carpal tunnel syndrome and panic disorder.

On February 25, 2000, Ledbetter complained of paresthesias of the left forearm and hand which had been present for 1 and 1/2 months. Tr. 168. On March 30, 2000, nerve conduction tests were consistent with mild to moderate bilateral carpal tunnel syndrome. Ledbetter's physician noted that, prior to trying any therapy, the condition was "minimally bothersome" in her dominant left hand and somewhat more bothersome on the right. He provided Ledbetter with wrist splints to wear for one month and told her to return if the splints did not control her symptoms. Tr. 166.

After one month, Ledbetter did not return. She did not report the splints failed to control her symptoms. Despite frequent office visits with medical care providers, Ledbetter did not mention wrist pain or paresthesias again until August 24, 2004, nearly four years after the expiration of her insured status. At that time, Ledbetter's grip was not weak and she denied

dropping things. Ledbetter told her physician wrist splints had given her relief in the past. Tr. 193.

The ALJ could reasonably expect that Ledbetter would have mentioned severe symptoms and functional limitations to medical providers if they had been present during the relevant time. Accordingly, the ALJ's conclusion that Ledbetter failed to establish the existence of such limitations on or before the date her insured status expired is supported by inferences reasonably drawn from the record.

Ledbetter testified that she began having panic attacks in about March 2000, and recalled reporting this to Geraldine Darroca, M.D. Tr. 238-39. Contemporaneous treatment records show that Ledbetter first mentioned anxiety with panic attacks to Dr. Darroca on April 8, 2002. Tr. 152-53. By October 22, 2002, the panic attacks had increased in frequency to once per week. Tr. 116-17. Her symptoms improved after Dr. Darroca prescribed Zoloft. Tr. 113-14.

Contemporaneous treatment notes reflect situational depression and anxiety during 2000, but Ledbetter's symptoms did not include panic attacks at that time. On March 21, 2000, Ledbetter told Larry Hirons, M.D., she was worried about the incarceration of her son and having trouble sleeping. Dr. Hirons prescribed Amitriptyline to help her sleep. Tr. 167. On August 11, 2000, Ledbetter was worried about the health problems of her husband's parents and reported another period of poor sleep. Dr. Hirons again prescribed Amitriptyline. Tr. 165. Ledbetter did not mention any mental health issue to any provider again until she saw Dr. Darroca in April 2002. The ALJ reasoned the contemporaneous records showing reports of panic attacks beginning in April 2002 were more reliable than Ledbetter's memory of panic attacks beginning in March 2000.

In sum, the ALJ properly evaluated the evidence of functional limitations attributable to carpal tunnel syndrome and panic disorder. Her conclusion that Ledbetter failed to prove she had functional limitations from these conditions before the expiration of her insured status is supported by reasonable inferences drawn from the record as a whole.

**II. <u>RFC Assessment</u>**

Ledbetter argues the ALJ improperly assessed her RFC, thereby undermining the conclusion that she is capable of doing her past work. The RFC is an assessment of the work-related activities a claimant can still do on a sustained, regular and continuing basis, despite the functional limitations imposed by her impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184. The RFC assessment must be based on all the evidence in the case record, and the ALJ must consider all allegations of limitations and restrictions. SSR 96-8p, 1996 WL 374184 * 5. Ledbetter asserts the ALJ erred by improperly rejecting her testimony and misconstruing the reports of agency medical consultants.

At the hearing in September 2004, Ledbetter testified she had experienced knee pain for 5 to 6 years, suggesting an onset in about 1999. Her back pain had persisted for 10 years, which suggests an onset in 1994. She described significant pain, but was not taking prescription pain medications or receiving treatment from a physician at the time of the hearing. Tr. 232.

Ledbetter testified she had suffered from carpal tunnel syndrome while working as a waitress from 1990 to 1999. At the time of the hearing, she found it hard to hold anything heavy with the left hand for very long. Tr. 234-35.

At the time of the hearing, Ledbetter testified she could sit for about 10 minutes but then would have to get up and move around or lie down. She could stand for about 20 minutes. She

could walk slowly, but could not climb stairs. She had to lie down to rest her back for 30 to 45 minutes at least 5 times a day. Tr. 237-38. Ledbetter testified that she experienced panic attacks that made her want to isolate inside her house. These began in about March 2000, and at the time of the hearing, occurred at least 4 times a week, lasting 1 to 3 hours. Tr. 238-39.

The ALJ found that, through December 31, 2000, when her insured status expired, Ledbetter retained the RFC to perform work restricted to light exertion, without concentrated exposure to dust, fumes, odors and extremes of temperature and humidity. Tr. 253. The ALJ credited Ledbetter's assertion that she has pain and other symptoms and found them sufficient to restrict Ledbetter to light work. The ALJ found Ledbetter's statements about the intensity, persistence and limiting effects of her symptoms not entirely credible. Tr. 254.

An ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of her symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When making a credibility evaluation, the ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen*, 80 F3d at 1284. The ALJ may also consider the claimant's daily activities, work record, the opinions of physicians and the observations of third parties in a position to have personal knowledge about the claimant's functional limitations. *Id.* In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the

claimant's prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id.*.; SSR 96-7p, 1996 WL 374186 *5-6.

The ALJ considered appropriate factors in evaluating Ledbetter's credibility. The ALJ pointed out that Ledbetter's medical records from the relevant period were very sparse and did not contain objective findings supporting the impairments she claimed. For example, Ledbetter had a diagnosis of COPD in December 1999, but this appeared to be improved after nebulizer treatments and Prednizone. Tr. 305. Diagnostic chest x-rays were surprisingly benign. Tr. 312.

Objective findings supporting a severe condition were not obtained until pulmonary function tests showed severe airway obstruction in December 2002, two years after Ledbetter's insured status expired. Tr. 326-28. In the intervening three years, Ledbetter did not seek treatment related to pulmonary function, except on November 20, 2002, when she had a cough and headache due to an upper respiratory infection. Tr. 111-14. Dr. Darroca believed Ledbetter's COPD was secondary to her tobacco substance abuse. Tr. 112. Despite this, Ledbetter persisted in smoking through the close of the current record in 2006.

The ALJ could reasonably conclude from the absence of objective and clinical findings and Ledbetter's lack of treatment, that Ledbetter did not experience significant limitations in pulmonary function on an ongoing basis until after her insured status expired. The ALJ's conclusion that COPD was not severe during the relevant period, except during exacerbations from irritants, including Ledbetter's ongoing smoking, and extremes of weather, is based on inferences reasonably drawn from the record.

Similarly, the contemporaneous treatment records relating to Ledbetter's other alleged impairments do not support functional limitations during the relevant time. Ledbetter had a knee

injury with ligament repair surgery in early 1993. Tr. 217-20, 222. This predated her alleged onset of disability by nearly 7 years, and there is nothing in the record suggesting it interfered with her work during the interim. Ledbetter testified to an onset of knee pain in about 1999, but this is not reflected in her treatment records. She did not receive medical treatment for her knee during 2000 or 2001. The ALJ also found Ledbetter's testimony did not describe any restrictions in work-related functions relative to her knee pain. Tr. 252.

On February 25, 2000, Ledbetter complained of upper back pain that had allegedly persisted for years. On physical examination, objective and clinical findings for her back were benign except some tenderness over the paraspinous muscular areas of the left thoracic spine. Ledbetter was diagnosed with a thoracic spine strain, but no chronic condition. Tr. 168. Ledbetter did not complain of back pain or seek treatment for back problems again before her insured status expired. Notably, when she filed her application in December 2002, Ledbetter alleged "lower back problems." Tr. 63. On November 12, 2003, Ledbetter complained of low back pain and described a history of fracturing her coccyx. Tr. 194. Diagnostic images showed only minor degenerative changes without evidence of an acute abnormality. Tr. 202-03.

Similarly and as described previously, Ledbetter's contemporaneous reports to treating sources regarding carpal tunnel syndrome and panic attacks were not consistent with her testimony four years later.

The ALJ also pointed out that Ledbetter's testimony was vague or nonexistent regarding the severity of her impairments and the functional limitations they imposed before her insured status expired. She gave very detailed statements regarding her then-current limitations at the

time of the hearing in September 2004, but made no statement about her limitations during the relevant period. Tr. 237-39.

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the evidence. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Here, the ALJ noted the inconsistencies between Ledbetter's contemporaneous statements to treating sources and her testimony four years later, the absence of medical findings supporting significant chronic medical problems, the absence of medical opinions suggesting disability and the sparseness of Ledbetter's treatment history during the relevant period. Based on these factors, the ALJ reasonably concluded that Ledbetter's contemporaneous statements to treating sources were more accurate than her memory as reflected in her testimony years after the alleged onset of disability. Tr. 254-55.

In deciding whether to accept Ledbetter's subjective statements about her symptoms, the ALJ considered appropriate factors and reached conclusions that are supported by substantial evidence in the record. Therefore, the ALJ's credibility determination should not be disturbed. *Batson*, 359 F3d at 1193; *Andrews*, 53 F.3d at 1039-40.

Ledbetter argues the ALJ purported to adopt the opinions of agency medical consultants, but objects that the medical consultants "offered no opinion regarding Plaintiff's capacities." Plaintiff's Brief 10. In fact, the ALJ gave greater weight to the findings and opinions of treating and examining physicians; she did not expressly adopt the opinions of medical consultants, but correctly observed they were consistent with the other opinions in the record. Tr. 255.

Furthermore, the agency psychologists and disability analysts who reviewed Ledbetter's treatment records uniformly found insufficient evidence to establish the existence of any physical

or mental functional limitation before her insured status expired. Tr. 183, 187, 188, 190, 191. Fairly characterized, these opinions indicate no restrictions on Ledbetter's capacities during the relevant period. This is far different from offering "no opinion" regarding her capacities, as Ledbetter asserts.

Ledbetter argues the absence of medical evidence shows that the ALJ improperly based her conclusions "on 'no evidence,' and demonstrated the ALJ's bias." Plaintiff's Brief 10. This argument must be rejected because it reverses the applicable burden of proof. As Ledbetter's attorney should know, the claimant bears the burden of proof and must prove that she was "either permanently disabled or subject to a condition which became so severe as to disable [her] prior to the date upon which [her] disability insured status expire[d]." *Armstrong v. Commissioner of Social Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

To meet this burden, the claimant must bring to the Commissioner's attention everything that shows she is disabled, including medical and other evidence that demonstrates her medical impairments and their effects on the ability to perform work-related activities. 20 C.F.R. § 404.1512. Under the applicable burden, the absence of medical evidence of disability cannot be attributed to error or bias on the part of the ALJ. The ALJ evaluated all of Ledbetter's allegations of limitations and restrictions in light of all the evidence she identified to support her claim. The ALJ arrived a conclusions supported by inferences reasonably drawn from the record as a whole. Accordingly, the RFC assessment cannot be overturned.

**III. Bias of the ALJ**

Ledbetter's attorney submits that "the ALJ's bias prevented the ALJ from deciding Plaintiff's claim properly." Plaintiff's Brief 10-11. He contends the ALJ decision was "punitive in nature." Plaintiff's Brief 12. He suggests the ALJ engaged in "Judicial misconduct" by limiting the hearing to vocational testimony but addressing other issues in her written decision. Plaintiff's Brief 17-18.

ALJs and similar quasi-judicial administrative officers are presumed to be unbiased. *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification," but the burden of establishing such a showing is on the party asserting bias. *Id.* quoting *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982).

Ledbetter's attorney asserts two grounds as evidence of bias. He believes bias is shown because the second ALJ reached different findings than the first ALJ. Plaintiff's Brief 6-7, 11-12. In particular, the second ALJ found fewer severe impairments and reached a less restrictive RFC assessment than the first ALJ. Tr. 21-22, 250, 253. The second ALJ concluded Ledbetter remained capable of performing her past work, unlike the first ALJ who found her capable of other work, but not her past work. Tr. 22, 255.

This argument does not show bias. When a federal court remands a case to the Commissioner, the regulations authorize the ALJ to consider "any issues relating to your claim . . . whether or not they were raised in the administrative proceedings leading to the final decision of your case." 20 C.F.R. § 404.983. The ALJ must take any action ordered by the Appeals

Council and may take any additional action that is not inconsistent with the Appeals Council's remand order. 20 C.F.R. § 404.977(b).

Here, the stipulated remand order from this court expressly directed the ALJ to "re-evaluate the medical evidence as a whole" and "re-evaluate Plaintiff's residual functional capacity" and to perform a new analysis of Ledbetter's ability to perform her past relevant work. Tr. 262. The remand order of the Appeals Council expressly vacated the decision of the first ALJ and incorporated the court's instructions. Tr. 264-65. Accordingly, instead of being bound by the findings of the first ALJ, the second ALJ was required to revisit the very issues identified in Ledbetter's argument as evidence of bias.

The second basis for Ledbetter's argument is that the ALJ stated the "sole issue" at the hearing was error in the vocational testimony taken by the first ALJ. Tr. 422. Ledbetter's attorney claims he would have presented additional evidence had he known the ALJ intended to revisit the nature of Ledbetter's severe impairments, her RFC and her ability to perform past work. Plaintiff's Brief 12, 14-17.

This basis also lacks merit. The terms of the stipulated remand order of this court and the remand order of the Appeals Council provided sufficient notice of the issues to be addressed on remand. The ALJ's statement limiting the evidence presented at the hearing did not purport to limit the issues she would consider in her written decision. Instead, it reflected that the remand order identified only one area in which new evidence was required. The remand order directed the ALJ to present new hypothetical vocational questions and afford Ledbetter an opportunity to address questions to a vocational expert. Tr. 262-63, 265.

The ALJ could have permitted additional medical evidence or testimony, because it was not precluded by the remand orders. Ledbetter's insured status expired 6 years before the latest hearing, however, and the second ALJ could reasonably have concluded that any additional evidence at such a late date would be less reliable than the evidence already in the record. Accordingly, her statement limiting evidence to vocational testimony did not show bias. In any event, Ledbetter did not object to the ALJ's limitation of the hearing evidence or offer additional evidence on other issues. Tr. 422.

In summary, Ledbetter failed to present any evidence to rebut the presumption that the ALJ was unbiased.

In conclusion, the ALJ applied proper legal standards and her factual findings are supported by inferences reasonably drawn from the record. The challenges Ledbetter asserts cannot be sustained. Accordingly, the court should affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d at 1039-40.

**RECOMMENDATION**

Based on the foregoing, the ALJ's decision that Ledbetter did not prove disability before the expiration of her insured status and is not entitled disability insurance benefits under Title II of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's decision should be affirmed.

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due March 10, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 25th day of February, 2008.

/s/ Paul Papak
Paul Papak
United States Magistrate Judge